# SIMON NEEDLE AND SIDNEY NEEDLE

*vs.*

## ALBERT D. COVER.

*Auction Sale of Land—Misrepresentation by Auctioneer—*
*Rescission in Equity.*

A bill by a purchaser to set aside an auction sale on the ground of misrepresentation by the auctioneer is not insufficient as failing to allege any specific damage, when it recites facts which make it apparent that unless such purchaser completes the purchase of this property, he will lose the amount deposited by him at the time of the sale.                    p. 648

Equity has jurisdiction to set aside a sale of property at auction on the ground of misrepresentation by the auctioneer of a material fact.                    p. 648

A bill by the purchaser at an auction sale to set aside the sale upon the grounds of misrepresentation by the auctioneer as to the duration of outstanding tenancies on the property, *held* not demurrable.                    p. 650

That the owners of the property, at the time of the auction sale of the property, did not know the duration of the tenancies, is immaterial if they, while thus in ignorance of the true facts, acquiesced in a misstatement in this regard, made by the auctioneer in their presence, by which the purchaser was misled.                    pp. 650, 651

*Decided June 27th, 1921.*

Appeal from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

The cause was argued before BOYD, C. J., BRISCOE. THOMAS, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*James E. Tippett* and *Sidney Needle,* for the appellants.

*Horace T. Smith* and *H. Webster Smith,* with whom was *Charles Ruzicka* on the brief, for the appellee.

Stockbridge, J., delivered the opinion of the court.

The bill filed in this case was in certain aspects an unusual one. By the bill and amended bill the appellee asked the Equity Court of Baltimore City to set aside and annul a sale made to him at auction in February, 1920, and to require the appellants to refund $2,000 paid as a deposit on the sale in question.

A demurrer was filed to the bill, which was overruled. The answers were then filed, testimony taken before the court, and a decree rendered in favor of the plaintiff. It is from that decree that the present appeal was taken.

At the oral argument the main contention of the appellants was that the demurrer to the bill should have been sustained and the bill dismissed. There was little or no argument upon the merits of the case. The appeal necessarily brings up both the demurrer and the subject matter, and unless there was palpable error on the part of the court in overruling the demurrer, it becomes necessary to consider the facts of the case.

With regard to the demurrer there are two or three matters to be passed upon *in limine.* Under the present rules of procedure in equity cases, formulated by this court, and from time to time revised, the same particularity in technical averment, is not now required as was formerly the case.

The present bill sets out the following condition of facts:

On February 3, 1920, Albert D. Cover had knocked down to him, as purchaser, two pieces of property—Nos. 214 and 216 North Holliday Street, in the City of Baltimore. That with regard to these two properties the question was asked at the time when the auctioneer invited bids, or during the progress of the bidding, how long the tenancies had to run, and that in reliance upon the replies made by the auctioneer, Mr.

Cover, or his agent, Mr. White, made the bids at which the properties were announced as sold. It further sets out that the unexpired tenancies, the length of them, were a material consideration in making the bids, and that subsequent investigation disclosed the fact that the duration of the tenancies was different from that announced by the auctioneer, in reply to these questions, and for that reason Mr. Cover refused to consummate the sale.

In support of the demurrer, various supposed deficiencies of allegations in the bill are apparently relied upon. It was urged that the case presented was one to which the principle of *caveat emptor* applies. The defect in this proposition is that the circumstances under which the sale is alleged to have been made do not give rise to a case where there is any room whatever for the application of that doctrine. It was urged that there was no specific damage alleged in the bill, but this ground cannot be sustained as a valid objection, since the facts recited make it apparent that unless Mr. Cover carries through to completion the deal for the purchase of these properties, he will be out at least his $2,000 deposited at the time of sale, and on the day following. This fact, while not specifically set forth as constituting the damage, makes it apparent that there was or might be substantial damage in the case. It was urged with great vehemence by the solicitor for the appellants that equity could have no jurisdiction because there was an adequate remedy at law. That argument was as fallacious as were the other points insisted upon by the appellants' solicitor.

A suit to recover back the amount of the deposit would have proven but one of numerous actions which might have been brought, such as a bill for specific performance, or a suit for the amount of the bid less the deposit already made, and thus a single action at law could have been brought which would have been but the beginning of protracted litigation. Inartificial as the bill was, it stated a series of facts, not least among which was the misrepresentation made by the auctioneer as to the duration of the tenancies in the two pieces of property which, if material, would amount to a fraud in law, and there-

fore was ample to justify the court in its ruling upon the demurrer.

This is not a case involving a resultant trust, or, in fact, any trust at all. It was rather a question of a fraud by misrepresentation of a material element as affecting the sale, or else a case of a mistake. Mr. Hammond, the partner of Mr. Ogle, who cried the sale as auctioneer, calls it "a mistake." If it be viewed in this light the law is well settled and is clearly stated in 10 *R. C. L.* 295, as follows: "An act done, or contract made, under a mistake or ignorance of a material fact is voidable and relievable in equity. This applies to many cases of innocent ignorance and mistakes on both sides as well as to cases of studied suppression or concealment of material facts by one of the parties, amounting in effect to a fraud, and rests for its foundation on the ground that an ignorance of facts, unlike an ignorance of law, does not import culpable negligence, since no person can be presumed to be acquainted with all matters of fact, nor is it possible by any degree of diligence in all cases to acquire that knowledge, and, therefore, to permit the just rights of a party to be lost for such a reason, when relief would not be prejudicial to the rights of others, would be manifestly unrighteous and inequitable."

The situation which gave rise to this case had best be a little more fully stated in connection with what has been urged as being a fraud in law upon Mr. Cover. In January, 1920, Messrs. Simon and Sidney Needle signed a contract to purchase the two properties on Holliday Street for the sum of $20,000. It was a time when there was a large amount of speculation or profiteering in real estate in the City of Baltimore. Before they received a deed for the property or made payment of the purchase money, inasmuch as other properties in the vicinity of these Holliday Street lots were to be sold at public auction, they thought the occasion opportune to advertise the sale of the property they had contracted to purchase.

Accordingly advertisement was made of this property through Hammond & Ogle as auctioneers. One of the pieces of property was in fee simple, the other had a ground rent. There was a fairly good attendance at the sale on February 3rd. No. 216 was first offered and the question was asked either by Mr. Cover or Mr. White as to the length of time which the tenants, then in occupancy of the property, had before their leases expired. Mr. Ogle, who was crying the property, said, after referring the question to Mr. Hammond, his partner, "nine months or less than a year," or as Mr. Ogle testified, "nine months, more or less," leaving the exact termination of the tenancy a good deal in doubt.

When it came to the offering of 214, a similar question as to the duration of the tenants' lease was asked, and the reply, according to the positive testimony of Mr. White and Mr. Cover, was that it was about the same as No. 216. Mr. Ogle testified that the reply was "a year or 18 months, more or less." The purpose for which Mr. Cover desired the property is not entirely clear. It may have been a speculation upon his part looking to a resale, or it may have been to the occupancy of the property himself as a warehouse, he having been forced out of the property previously occupied by him as a warehouse at Mt Clare. In either event the time of the then existing tenancies he testifies to have been a matter of material importance in determining the amount which he would bid for the property. In this testimony he is nowhere contradicted.

There have been numerous cases where the term of possession has been held to be material. *Somerville* v. *Coppage*, 101 Md. 519. In the present case the auctioneer's statement as to the unexpired duration of the leases was based upon statements made by one of the appellants.

After the conclusion of the sale, either Mr. Cover or Mr. White asked Mr. Needle to let him see a copy of the leases, and such inspection or positive information was promised to be given him. It not being forthcoming, Mr. Cover then applied to the tenants himself for the information and he

found that while one of them, No. 216, would terminate in about nine months, the other had fully a year to run from the time of the sale. Getting this information, Mr. Cover, through his attorney, announced the abandonment and rescission of the contract, and demanded the return of the money he had put up as a deposit. It is true that Messrs. Needle did not themselves know, at the time when the representations were made, as to the length of time for which the tenants were entitled to possession, but they nevertheless were present when the property was offered, and did not contradict the statements of Mr. Ogle, and where that which is alleged as misreprsentation is made in ignorance of the true facts, it would not amount to a fraud in fact, but is of the class which constitutes a fraud in law. While, in the present case, an action at law for deceit would not be maintainable, a bill in equity can be. *Tucker* v. *Osborne,* 107 Md. 613.

It is, of course, requisite that the party complaining shall have been misled by the misrepresentations made. *Gunby* v. *Sluter,* 44 Md. 237. Under the testimony in the case of Messrs. Cover and White, there can be no doubt but that Mr. Cover was misled and there is no attempt upon the part of any witnesses to deny it; and in *Wegefarth* v. *Wiessner,* 134 Md. 555, it was held not merely that the person did rely upon the representations made, but that he must have the right to rely upon them. In this case, before making the representation as to the duration of the tenancies, Mr. Ogle inquired of Mr. Hammond, and apparently also of Mr. Needle, for the answer proper to be given to prospective bidders at the sale, and their reply seemed to have been audible not merely to the auctioneer but to the appellee as well, and therefore the appellee had the right to rely upon the statements which were made.

The conflict of testimony is not great, but it is to be noted in this regard that the testimony given by Mr. White and Mr. Cover is clear, direct and very positive, while the testimony of the two Messrs. Needle on this matter is far less direct and positive and frequently tinged with doubt. The testimony of

the auctioneer, while professing to give the precise language used by him, is to be received with more caution, his experience as an auctioneer having been mainly along lines other than real estate, and the time between the offering for sale and the time of giving his testimony was such that he cannot reasonably be expected to give the precise language used by him. As was said in *Coan* v. *Consol. Gas Elec. L. and P. Co.,* 126 Md. 506, the case presented is a proper one for the rescission of the alleged contract upon the ground of fraud, and from that it follows that the demand for the return of the $2,000 deposit was proper and that the refund should be made.

*Decree affirmed, with costs.*