MINNIE EUZENT *v.* MARY E. BARRASH, ET AL.

[No. 2, January Term, 1942.]

*Decided April 8, 1942.*

452

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, and MARBURY, JJ.

*H. Mortimer Kremer*, with whom were *Herbert Myerberg* and *Charles Carroll, Jr.*, on the brief, for the appellant.

*James Clark* and *Justinus Gould* for the appellees.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer to the bill of complaint. The defendant was given twenty days to answer, but chose to appeal.

According to the bill of complaint, Minnie Euzent, defendant and appellant, owned a half-acre lot in the village of Poplar Spring in Howard County, improved by a building in which she conducted a general store, which she did, on the 22nd day of April, 1941, agree in writing to sell and convey to the plaintiffs and appellees, George Barrash and Mary E. Barrash, his wife, for $7,200, on account of which they paid $300 in cash, the sum of $1,400 to be paid at the time of settlement, when the vendees were to deliver a mortgage of $5,500, to mature in twelve years, payable in installments.

At the same time, the defendant, Mrs. Euzent, entered into a contract whereby she agreed in writing to sell, and George Barrash agreed to buy, the stock and fixtures in the store and on the premises for $4,000, of which $200 was paid in cash, the balance to be paid "at the date of settlement, which shall be within twenty-two days from the date hereof, time being of the essence." There is a provision in the contract that: "This agreement shall be null and void at the option of the vendee and all deposits refunded in the event that the vendor's warranties and agreements are not kept or in the event that the contract for the sale of the land and buildings upon which this building is located made on the same date as this agreement and between the vendor hereof and George Barrash and Mary E. Barrash, his wife, shall not be finally and completely consummated." There

was a like provision in the contract for the sale and purchase of the real estate and the consummation of each agreement depended on the other.

In the store contract there is a warranty that the defendant does a gross business of at least $500 per week.

The real estate agreement provided that "Taxes, water and all other expenses to be paid or allowed for by the vendor to the date of transfer, which shall be within twenty-two days from the date hereof, time being of the essence hereof."

In the store contract, the defendant agreed "to remain at the place of business for a period of three weeks and assist the vendee and introduce him to all her customers. To keep the receipts from the business and from the date of this agreement in a separate account and to turn it over to the vendee at the time of settlement, less current bills paid."

The bill charged that the plaintiffs, "for the purpose of verifying the said Minnie Euzent's guarantee that she does a gross business of at least Five Hundred Dollars ($500.00) per week, went to the said store and assisted her in the conduct," and

"(6). That the said Minnie Euzent so conducted said store, and your orators assisted her in so conducting the same for the period of three weeks, and it was then found that the said Minnie Euzent was only able to do a gross weekly business as follows, that is to say:

"From April 22nd, 1941, to April 28th, 1941, $399.31

"April 29th, 1941, to May 5th, 1941, $432.52

"From May 6th, 1941, to May 12th, 1941, $416,57, which amounts are considerably less than the minimum of Five Hundred Dollars ($500.00) warranted by her, and this notwithstanding the fact that in an attempt to boost the total amount of weekly sales the same Minnie Euzent sold considerable merchandise at cost and even below the cost price thereof.

"(7) That immediately after the said period of three weeks your orators protested to the said Minnie Euzent

454

about the lack of business as represented, and expressly warranted by her, and demanded the recission of said contracts, and the return to them of the deposits of Three Hundred Dollars ($300.00) and Two Hundred Dollars ($200.00) made, as aforesaid, but the said Minnie Euzent refused to rescind said contracts and further refused to return said deposits."

It further charged that the purchase of the properties was "induced by a material misrepresentation, as well as by the express warranty above quoted with respect to the volume of weekly business done by her," and that the defendant has the business and real estate listed for sale with real estate brokers in Baltimore, and that unless restrained the same will be sold and the plaintiffs irreparably injured.

It then prayed (a) that both contracts be rescinded and annulled; (b) that the defendant be required to return the deposits so made by them, with interest; (c) that the properties be impressed with a lien or trust to the extent of the deposits so made; (d) that pending the final determination of the case, the defendant be restrained from selling, disposing, or encumbering the properties.

No order was passed on the bill, and the defendant demurred; the demurrer overruled, and this appeal taken.

The appellant's contentions are that the bill contains no allegation of fraud, but merely charges an ordinary breach of warranty, for which there is a full and complete remedy at law. This is ordinarily true, where the only question is a breach of warranty (9 *C. J., Cancellation of Instruments*, p. 1181, Sec. 45; 12 *C. J. S., Cancellation of Instrucents*, p. 982, Sec. 29; *Reid v. Hughlett*, 135 Md. 181, 108 A. 477), where a money judgment will satisfy every claim and demand of the plaintiff. The test in this State is not whether the vendor made a statement known by her to be false, but whether it was believed to be true and so influenced the purchaser in entering into a contract. As said in *Tucker v. Osbourn*, 101 Md. 613, 618, 61 A. 321, 322: "In equity 'the gist

of the inquiry is not whether the party making the statement knew it to be false, but whether the statement made as true was believed to be true, and therefore, if false, deceived the party to whom it was made.' *Joice v. Taylor*, 6 Gill & J. (54), 58, 25 *Am. Dec.* 325. In *Trimble v. Reid*, 97 Ky. 713, 31 S. W. 861, the court said: 'In such a case the court will, on these facts, rescind the contract without any fraudulent intent being shown—without any knowledge, actual or constructive, on the part of the vendor that the statements were in fact false'." And quoting *Kountze v. Kennedy*, 147 N. Y. 124, 41 N. E. 414, 29 *L. R. A.* 360, 49 *Am. St. Rep.* 651: "The law affords remedies for the consequence of innocent misrepresentation. A contract induced thereby may in many cases be avoided, and the equitable powers of courts are frequently interposed for the rescission of contracts or transactions based upon mistake or innocent misrepresentations."

In this case it is alleged and so stated in the contract of sale for the store that the vendor warranted that she "does a gross business of at least five hundred dollars ($500.00) per week." The agreement was not to be consummated until three weeks after its date, and possession not delivered until then. The agreement provided that the defendant should remain at the place of business for three weeks, assist the vandee and introduce him to her customers, she to keep the receipts in a separate account, and to turn the proceeds, less current bills paid to the vendee at the time of settlement. The bill alleges that the defendant conducted the business for three weeks, and that he assisted, and that in spite of defendant's efforts, to keep up the volume of sales, the returns for the three weeks were $1,248.40, or $251.60 less than the minimum amount of business the defendant said in the agreement of April 22, 1941, she was doing.

The general rule is that a warranty relates only to the time of sale, though it has been held in some cases that it may survive the contract for a reasonable time

for discovery of defects only ascertainable by use. "A warranty may by the terms of the agreement be a continuing one and applied to future deliveries under the contract." 35 *Cyc., Sales,* p. 415; *Bryant Co. v. Hamlin School District,* Tex. Civ. App., 274 S. W. 266; *Colt Co. v. Berry,* 218 Ky. 119, 290 S. W. 1059. In the sale of a business if the inducement to the buyer is that the seller does or has been doing a certain amount of business, a contract may be rescinded and the money paid recovered, at law or in equity, as the facts determine. *Gibula v. Sause,* 173 Md. 87, 194 A. 826; *Needle v. Cover,* 138 Md. 646, 114 A. 698; *Kleiman v. Needle,* 140 Md. 107, 117 A. 3; *Schley v. Zalis,* 172 Md. 336, 191 A. 563. Of course, if the statement of the seller, as to the volume of business, is true, the fact that business diminished in the hands of the purchaser, would give the latter no right to recover or rescind.

In this case, there is no charge that the defendant had misrepresented the volume of business prior to April 22, 1941, but plaintiffs predicate their case on the receipts for the three weeks intervening between that date and the day, twenty-two days later, fixed for settlement. The charge is made in the bill and by the demurrer is admitted (*Noel v. Noel,* 173 Md. 152, 195 A. 315) that the conduct of the business for three weeks by the defendant was to prove the accuracy of the defendant's warranty of the volume of business, which the plaintiffs allege was an inducement to enter into the contract to purchase. The plaintiffs assume that the showing of the volume of business in the three weeks succeeding the date of the contract is evidence of the falsity of the warranty. The defendant represented that prior to April 22, 1941, she did a minimum business of $500 per week. If she did, there would be no misrepresentation; if she did not, there would. It is a case which we think should be heard on its merits, in order that the court might pass on the question of misrepresentation or good faith inducing the contract.

So far as the question of jurisdiction is concerned, it has been settled by the case of *Ahrens v. Ijams*, 156 Md. 1, 142 A. 489, where it was held that the vendee in a contract for the sale and purchase of real estate has paid money on account, and the title to part of the land turns out to be defective, that the vendee has a lien on the property for the money paid, which can only be enforced in equity. Equity having once so attached, will be retained for the purpose of affording full relief. *Gibula v. Sause*, 173 Md. 87, 94, 194 A. 826. In such a case, equity furnishes the only complete remedy. *Needle v. Cover*, 138 Md. 646, 114 A. 698; *Kleiman v. Needle*, 140 Md. 107, 117 A. 3; *Stephenson v. Upper Ashburton Realty Co.*, 170 Md. 288, 294, 184 A. 230.

For the reasons assigned, the order appealed from will be affirmed and the case remanded so that the defendant may answer.

*Order affirmed, with costs, and case remanded.*